UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONALD K. SCHAEFER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05cv641 SNL |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| EDUCATION; UNITED STATES ) | |
| DEPARTMENT OF HEALTH AND ) | |
| HUMAN SERVICES; UNITED STATES ) | |
| DEPARTMENT OF JUSTICE; and ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (#7), filed June 30, 2005. Plaintiff brought this *pro se* action against the Department of Education ("DOE"), the Department of Health and Human Services ("HHS"), the Department of Justice ("DOJ"), and the United States of America. Plaintiff is seeking declaratory, injunctive, and equitable relief for Defendants' failure to act on administrative complaints Plaintiff filed against Washington University. This is Plaintiff's fourth lawsuit based upon his dissatisfaction with the University.

### *BACKGROUND*[1]

---

[1] The Court finds a detailed recitation of the facts to be repetitive. This is the fourth time Plaintiff's claims have been litigated in this district. For a more complete description of the facts, see Schaefer v. Washington University, No. 4:00cv678 ERW (E.D. Mo. Mar. 12, 2002) ("Schaefer I"), United States ex rel. Schaefer v. Washington University, No. 4:03cv54 ERW (E.D. Mo. Oct. 28, 2003) ("Schaefer II"), and Schaefer v. Matheson, No. 4:03cv1830 ERW (E.D. Mo. Feb. 26, 2004) ("Schaefer III").

1

Plaintiff was a student in the Occupational Therapy ("OT") program at Washington University. While there, Plaintiff purportedly treated the faculty and administration with hostility, made unsupported accusations that Washington University professors were fixing his grades and conspiring against him, and was fired from two field work programs. The University's administrators repeatedly tried to help Plaintiff improve his performance, but he refused to cooperate. Plaintiff was dismissed from the OT program in March of 1999.

From 1995 through 1999, Plaintiff filed several complaints with the DOE and HHS against Washington University. Plaintiff filed his first complaint in August of 1995 with the Office of Civil Rights ("OCR") of the DOE. This complaint alleged that the University retaliated against Plaintiff for accusing the staff of fixing his grades; it was closed for lack of jurisdiction. "Plaintiff refiled the complaint primarily on the same operative facts, this time claiming he had been discriminated against because of his age and sex. This complaint, like each of Plaintiff's eight subsequent complaints against the University and others, was administratively closed with no adverse findings against the University." Schaefer I at 5.

On April 24, 2000, Plaintiff filed his first suit, Schaefer I. Plaintiff asserted that Washington University discriminated against him on the basis of his age and sex, in violation of 20 U.S.C. § 1681 *et seq.* and 42 U.S.C. § 6102, and retaliated against him for filing administrative complaints. The Court granted summary judgment in favor of Washington University, finding that Plaintiff failed to produce evidence supporting his accusations. On January 15, 2003, Plaintiff filed Schaefer II, a *pro se* action against Washington University for violations of the False Claims Act, 31 U.S.C. § 3729. Schaefer II was based on the same basic facts as Schaefer I, and the United States refused to intervene. The case was dismissed because a plaintiff cannot proceed *pro se* in a *qui tam* action.

On November 3, 2003, Plaintiff filed Schaefer III against two administrators of Washington University. Plaintiff alleged "educational malpractice," defamation, civil fraud and misrepresentation, and civil conspiracy. The Court found that Plaintiff's suit was barred by *res judicata* and collateral estoppel. The issues in Schaefer III involved the same nucleus of operative facts as, and were fully fairly adjudicated in, Schaefer I. The court also issued an injunction, "prohibiting Plaintiff from relitigating any of the claims or issues raised in Schaefer I in either federal or state court." Schaefer III at 28.

In the instant case, Schaefer IV, Plaintiff returns. He is suing the government for its refusal to take action against Washington University. The Defendants raise several arguments in support of their motion to dismiss. They assert that this case is barred by the Court's prior injunction in Schaefer III, that there is no jurisdictional basis for Plaintiff's claims because of the Government's sovereign immunity, and that Plaintiff failed to state a claim upon which relief could be granted.

### *MOTION TO DISMISS STANDARD*

In passing on a motion to dismiss, a court must view the facts alleged in the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986). The court should not grant a motion to dismiss merely because the complaint does not state with precision every element of the offense necessary for recovery. 5 Wright & Miller, Federal Practice and Procedure: Civil, Sec. 1216 at 120 (1969). A complaint is sufficient if it contains "allegations from which an inference can be drawn that evidence on these material points will be introduced at trial." Id. at 122-123. Moreover, a court should not

dismiss a complaint unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

The Court must view the complaint in the light most favorable to the plaintiff and should not dismiss it merely because the Court doubts that the plaintiff will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d 1053, 1058 (8th Cir. 1982). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982).

## *DISCUSSION*

As previously stated, Defendants assert that this case is barred by the Court's prior injunction. According to the ruling in Schaefer III, if this case is based on the same claims or issues raised in Schaefer I, it must be dismissed. In Schaefer I, Plaintiff alleged four separate counts in his complaint.

> Count I contains allegations that [Washington] University discriminated against Plaintiff on the basis of age and sex in violation of 20 U.S.C. § 1681 *et seq.* ... and 42 U.S.C. § 6102 ..., and retaliated against him for asserting his rights under the aforementioned statutes. Count II alleges that the University breached a "contract" to provide Plaintiff with a degree in Occupational Therapy in exchange for Plaintiff's payment of tuition and completion of the University's academic requirements. Count III alleges that [Washington] University and Defendant RehabCare Group Therapy Services Inc. ("RehabCare") "tortious[ly] breach[ed]" the same "contract" alleged in Count II. Finally, Count IV alleges that the University conspired with RehabCare to tortiously interfere with the University's "contract" with Plaintiff.

Schaefer I at 2. In Schaefer IV, Plaintiff is again alleging that Washington University discriminated against him based on his age and sex and retaliated against him by fixing his grades. However, Plaintiff is now suing the Government to compel regulatory action against the University. Plaintiff

makes several claims in this creative attempt to force the Government's hand. The Court will examine each of these claims to determine their viability.

**A.  DECLARATORY RELIEF**

Plaintiff's first request is for declaratory relief. Plaintiff asserts that Washington University "fixed all of his grades in retaliation for criticizing the university, and then failed to follow [the Family Educational Rights and Privacy Act, 20 U.S.C. 1232g ("FERPA")] so that the fixed grades [could not] be challenged or corrected." Plaintiff's Complaint at ¶ 20. To remedy this situation, Plaintiff requests that the Court:

> Declare that [Washington University ("WU")] knowingly violated FERPA at all times herein;
>
> Declare that WU's FERPA violations discriminated and retaliated against Plaintiff and concealed WU grade fixing at all times herein;
>
> Declare WU's violations herein affected other students in numbers and ways yet to be determined;
>
> Declare that WU's FERPA violations herein obstructed investigations of Plaintiff's civil rights complaints;
>
> Declare that WU's FERPA violations render WU ineligible for federal funding;
>
> Declare WU's federal funds claims false at all times herein;
>
> Declare that WU's submission of known false federal funds claims violates federal wire fraud statutes at all times herein;
>
> Declare that WU's FERPA violations herein contribute to violations of Plaintiff's due process rights by Defendants;
>
> Declare that WU's grade fixings herein contribute to violations of Plaintiff's rights by defendants;
>
> Declare that [American Occupational Therapy Association's] and [North Central Association of Colleges and Schools'] violations of statutory accreditation procedures contribute to violations of Plaintiff's due process rights by Defendants[;]

5

> Declare that the Government Defendants failed to enforce Plaintiff's FERPA and due process rights at all times herein[;]
>
> Declare that each of Defendants' OCR findings noted herein by number shall be amended to include the declarations of this Court[;]
>
> Declare that Defendants shall take all applicable legal enforcement actions against WU, including but not limited to: civil and criminal prosecutions, fines, penalties, actions against involved individuals, full restoration of Plaintiff's property and rights, and action to discourage recurrence of illegal acts herein[;]
>
> Declare that Defendant's taking of all applicable legal enforcement actions is a condition precedent for restoring federal funding to WU[;]
>
> Declare that Defendant's taking of all applicable legal enforcement actions is a condition precedent for restoring federal funding to WU [sic][;]
>
> Declare that Defendants shall notify all students at WU, who may have been similarly affected at all times herein, of this Court's decision so that they might seek redress;
>
> Declare that notification and compensation of similarly affected students shall be a condition precedent for resuming federal funding and full accreditation of WU.

Plaintiff's Complaint at ¶ 45. Plaintiff cannot relitigate his Schaefer I claims of retaliation and grade fixing in the guise of a FERPA claim. As the Court held in Schaefer III, Plaintiff is barred by injunction from bringing suit on this issue. The Court will not consider Plaintiff's request for declaratory relief.

**B.    INJUNCTIVE RELIEF**

Plaintiff next requests that the Court grant him injunctive relief. Plaintiff wishes to:

Enjoin the Defendants, or others acting in concert with them, from issuing federal funds to WU until declaratory relief actions *supra* are fully implemented.

Enjoin the Defendants, and others acting in concert with them, from fully accrediting WU until declaratory relief actions *supra* are fully implemented.

Enjoin the Defendants, and others acting in concert with them, from issuing federally guaranteed loans to WU until declaratory relief actions *supra* are fully implemented.

Enjoin the Defendants from collecting any defaulted federally guaranteed loan originating at WU until declaratory relief actions *supra* are fully implemented with showing that acts herein did not affect those loans.

Enjoin the Government Defendants from collecting any defaulted federally guaranteed loan originating at WU via IRS tax refund or offsets until declaratory relief actions *supra* are fully implemented, and showing that acts herein did not affect those tax collections.

Enjoin the Defendants from using [American Occupational Therapy Association] and [North Central Association of Colleges and Schools] for purposes of accrediting higher education institutions.

Plaintiff's Complaint at ¶ 46.

The Plaintiff's first five requests for injunctive relief are based on his claims for declaratory relief, which are barred by the Schafer III injunction. Therefore, the Court will not address those claims. Plaintiff's final request, that the Court dictate which accreditation institution the Government can or cannot use, is baseless and summarily denied. Plaintiff receives no injunctive relief.

### C. EQUITABLE RELIEF

Finally, Plaintiff asserts the right to equitable relief. Plaintiff requests that the Court award damages, compensating Plaintiff for losses suffered from the Government's refusal to sanction Washington University. As a basis for these damages, Plaintiff states:

52. Defendants breached their duties to Plaintiff and were careless and negligent in one or more of the following respects:

(a) Negligently investigating Plaintiff's complaints herein;

(b) Negligently upholding their statutory obligations;

(c) Negligently evaluating Plaintiff's complaints and ignoring applicable statutes;

(d) Negligently accepting false statements made to them during their investigation of Plaintiff's complaints and failing to prosecute upon learning of the falsity of the information they were given;

7

(e) Negligently filing discovery in Plaintiff's complaints with incorrect, incomplete allegations and failing to correct those errors, even after notification;

(f) Negligently failing to make reasonable explanations of Defendant's investigatory procedures so that the difficulties could have been avoided;

(g) Negligently failing to apply applicable federal statutes and regulations in Plaintiff's complaints;

(h) Negligently failing to review their earlier False Claims Act lawsuit non-participation after 2004 with respect to WU's testimony admitting guilt;

(i) Negligently failing to communicate with Plaintiff for a period of many months after receipt of transcripted evidence in 2004 thereby increasing damages suffered by Plaintiff;

(j) Negligently failing to address the issue of Plaintiff's illegal acts affecting guaranteed loans or the false information given to Plaintiff's lenders by WU after 2004;

(k) Negligently failing to correct their prior investigations of Plaintiff's complaints after 2004 upon learning their earlier efforts were incompetent;

(l) Negligently continuing accreditation of WU after 2004;

(m) Negligently continuing [National Institute of Health ("NIH")] funding of WU after 2004;

(n) Negligently withdrawing from statutory enforcement in Plaintiff's complaints, not on the merits, but due to Defendants' desire to conceal their earlier negligence;

(o) Negligently failing to take action with respect to other students similarly affected;

(p) Negligently failing to take action with respect to other NIH fund recipients similarly unqualified.

53. As a direct and proximate result of the Defendants' negligence and breach of their applicable statutory duties:

(a) Plaintiff was deprived of his right to a [sic] both a trial on the merits and to OCR findings on the merits[;]

(b) Plaintiff was compelled to pay substantial sums for legal representation[;]

(c) Plaintiff's legal efforts and due process in the courts and before OCR was substantially undermined[;]

(d) Plaintiff was compelled to pay substantial sums filing legal actions against WU[;]

(e) Plaintiff endured substantial unwarranted delays in the enforcement of his rights[;]

(f) Plaintiff lost substantial property, rights, and suffered lost income[;]

(g) Plaintiff was compelled pay educational loans which he would not otherwise have had to pay[;]

(h) Plaintiff was compelled to endure unwarranted Government dunning activity and damage to his credit ratings[;]

(i) Plaintiff was compelled to learn legal proceedings and file court papers on his own behalf at a substantial cost and loss of income[;]

(j) Plaintiff was compelled to pay substantial court costs to lawsuit defendants[;]

(k) But for Defendants conduct, the Plaintiff would have been successful in the prosecution of his underlying claims against WU, causing substantial lost income and property.

* * *

Plaintiff requests the following equitable relief:

Awarding compensatory damages in favor of Plaintiff and against Defendants, jointly and severally, in an amount to be proved at trial;

Awarding punitive damages in favor of Plaintiff and against Defendants, jointly and severally, based on Defendants' willful and wanton conduct;

Awarding attorney fees and expenses of litigation, based on Defendants' failures to enforce the law and do their duties over many years;

Order Defendants to restore Plaintiff's status and property to the condition in which it should have been except for Defendants' negligence[;]

Order establishment of an independent review Board to specifically review Defendants' policies and funding for OCR, FERPA, NIH and accreditation[;]

Order that the Board's purpose shall be to review and publicly report on Defendants' compliance with their statutory duties herein, and to notify students and institutions similarly affected;

> Order that Defendants shall provide appropriate records for said independent review board to accomplish its mission, and shall fund it at $350,000 per year for up to five years to cover personnel and expenses;
>
> Order that Plaintiff shall be a member of said board[.]

Plaintiff's Complaint at ¶¶ 52-53.

Initially, the Court would like to address Plaintiff's last claims for equitable relief -- those requesting the creation of an independent review board. Although Plaintiff's demands are innovative, the Court cannot create an independent review board to supervise an executive agency. This request is denied.

Plaintiff also prays for monetary relief. Defendants argue that the Court cannot award compensatory and punitive damages in this instance because the Defendants are protected by sovereign immunity. "Sovereign immunity is jurisdictional in nature. Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." F.D.I.C. v. Meyer, 510 U.S. 471, 474, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) (quoting United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 770, 85 L. Ed. 1058 (1941)). Absent a clear and express waiver of immunity, the Court does not have subject matter jurisdiction to hear Plaintiff's claims and the Defendants are immune from suit. Plaintiff argues that the Defendants' immunity is waived by the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* ("APA") and the Federal Torts Claim Act, 28 U.S.C. § 2671, *et seq.*, and 28 U.S.C. § 1346(b) ("FTCA").[2]

---

[2] Plaintiff makes two additional arguments, both stemming from a misunderstanding of the law. These arguments are as follows:

Because statutes allow certain agencies to "sue and be sued," Plaintiff can bring suit against the DOE, HHS, and DOJ, even though that language is not present in their organizing statutes.

Because the OCR previously entered into a Resolution Agreement with Washington University in response to Plaintiff's complaints and because Plaintiff attempted to bring a *qui tam* suit in Schaefer II, the Government Defendants are subject to Plaintiff's "counterclaims" in this action.

i. <u>Administrative Procedure Act</u>

Plaintiff asserts that the APA waives the Government's sovereign immunity, allowing Plaintiff to recover monetary damages. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. There are two prerequisites to bringing suit under the APA: final agency action and no other adequate remedies in a court. 5 U.S.C. § 704. If these prerequisites are not met, the APA does not waive Defendants' sovereign immunity. The parties did not provide sufficient evidence for the Court to determine whether final agency action was taken, so the Court will assume for the basis of this Motion that the first requirement was met.[3]

This brings us to the second part of the analysis, whether there are other adequate remedies in a court. In <u>McClaskey v. La Plata R-II School District</u>, 364 F. Supp. 2d 1041(E.D. Mo. 2005), the Court examined a case substantively identical to the one at bar. A student alleged that she was subject to civil rights violations by her high school, a recipient of federal funds. She brought suit under the APA against OCR for failing to adequately investigate her discrimination complaints and failing to enforce civil rights statutes. The Court held that the APA did not provide a private right of action for damages against OCR or the funding agency because the plaintiff had an alternative adequate remedy -- an action against the school. <u>Id.</u> at 1044. In this case, Plaintiff also had an alternative adequate remedy -- an action against the recipient of federal funds, Washington University. Plaintiff attempted to make use of this remedy on three prior occasions. That Plaintiff lost those suits, and is barred by injunction from raising the claims or issues again, does not negate the fact Plaintiff

---

[3]Many of Plaintiff's claims may also be time barred by the statute of limitations. The relevant statute states that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). Because the parties did not provide the Court with sufficient date specific information, the Court will assume for the purpose of this Motion that the claims are not time barred.

had another adequate remedy in a court. The APA does not waive Defendants' immunity from Plaintiff's suit.

ii.     Federal Torts Claim Act

Plaintiff next argues that the FTCA waives Defendants' immunity from suit. Under the FTCA, in most circumstances, the United States may be held liable for the torts of its employees as would a "private person ... in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346 (b)(1); see also 28 U.S.C. § 2674. The federal district courts have exclusive jurisdiction over such claims, but cannot exercise that jurisdiction "unless the claimant shall first have presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency..." 28 U.S.C. § 2675(a); see Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993) ("Presentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant."). "The failure of an agency to make a final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim." 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993).

To present a claim to the DOE, the aggrieved party must file "an executed Standard Form 95 or other written notification of an incident accompanied by a claim for money damages in a sum certain" to the DOE Claims Officer in Washington, D.C. 34 C.F.R. § 35.2. The same general procedures apply for the HHS, but the complainant must submit the notification to "the office, local, regional, or headquarters, of the constituent organization having jurisdiction over the employee involved in the ... incident, or with the Department of Health and Human Services Claims Officer [in] Washington, D.C." 45 C.F.R. § 35.2.

According to the Complaint, Plaintiff filed five civil rights complaints with DOE and HHS from August 1995 through 1999. "During the period covered by this complaint Plaintiff provided the same information in his OCR complaints to the Government's Accreditors, also alleging that [Washington University] was fixing grades and violating various statutes, and was, therefore, ineligible for accreditation." Plaintiff's Complaint at ¶ 21. Plaintiff's letters to the Government's Accreditors do not comply with the presentment requirement of 28 U.S.C. § 2675(a). A proper government agency never received notice of his grievances. The Accreditors are private non-governmental organizations, not agencies charged with the power to take regulatory action.[4] Because Plaintiff did not present his claims to the appropriate Federal agency as required under FTCA, the Court does not have jurisdiction to hear these claims.

However, the complaints filed with DOE and HHS from 1995 through 1999 do meet the presentment requirement because Plaintiff submitted these claims to the appropriate agencies. These complaints also meet the second requirement -- final agency denial. Although Plaintiff did not provide evidence showing final agency action on all claims, they were filed over six months ago. Therefore, it is deemed that there were final denials on all of Plaintiff's administrative complaints.[5]

Despite the fact the Court has jurisdiction to hear Plaintiff's remaining demands, his claim still must fail. The FTCA is not a "blanket waiver" of sovereign immunity. C.R.S. by D.B.S. v. United States, 11 F.3d 791, 795 (8th Cir. 1993). Instead, the Government retains sovereign immunity through several statutory exceptions. One such exception is for discretionary functions. Under the

---

[4]See Bureau of Educational and Cultural Affairs, United States Department of State, Accreditation Guide, (visited October 27, 2005) <http://educationusa.state.gov/accred.htm>.

[5]The six year statute of limitation mentioned *supra* in footnote 3 is also applicable to Plaintiff's claims under the FTCA. But again, the Court will assume for the purposes of this Motion that Plaintiff's claims are not time barred.

discretionary function exception, any suit "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the party of a federal agency" is not actionable under the FTCA. 28 U.S.C. § 2680(a).

There is a two part test for determining whether the discretionary function exception is applicable. The first requirement is that the conduct in question involve an "element of judgment or choice." Berkovitz v. United States, 486 U.S. 531, 536, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988). Thus, the relevant inquiry is "whether the challenged actions were discretionary, or whether they were instead controlled by mandatory statutes or regulations." United States v. Gaubert, 499 U.S. 315, 328, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). If the agency employee was not under a mandatory duty to take action, the Court must determine if the judgment or choice at issue is "of the kind that the discretionary function exception was designed to shield." Id. "Because the exception's purpose is to prevent 'judicial second-guessing' of government decisions based on public policy considerations, it protects only those judgments 'grounded in social, economic, and political policy.'" C.R.S. by D.B.S., 11 F.3d at 796 (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 814, 104 S. Ct 2755, 81 L. Ed. 2d 660 (1984)).

Agency policies dictate how a government employee should conduct the investigation of sex and age discrimination claims. In the DOE and HHS, decision-makers view the evidence, determine whether or not a violation occurred, and attempt to find a beneficial resolution to the issue. See 34 C.F.R. §§ 100.4, 106.71, & 110.33; 45 C.F.R. §§ 80.7 & 80.8. But there is no requirement that these agencies must investigate every complaint.[6] Investigations of civil rights violations must, by

---

[6]See Schaefer III, which states "[t]here is no specific statute, DOE regulation, or policy that dictates that the DOE must investigate every OCR complaint. Therefore, decisions to investigate are certainly discretionary." Schaefer III at 12 (citing Benigni v. United States, 141 F.3d 1167, 1998 WL 165159 (8th Cir. 1998) (unpublished opinion)).

definition, include an element of judgment or choice because decision-makers must use their judgment to determine the tenability of the allegation.[7]  Therefore, the agency conduct was discretionary.

The final question is whether the agency decision is based on public policy considerations. "Generally, when governmental policy permits the exercise of discretion, it is presumed that the acts are grounded in policy." Chantal v. United States, 104 F.3d 207, 212 (8th Cir. 1997). "It is well established that a decision which requires the weighing of competing interests is 'susceptible to policy analysis' and typifies the kind of governmental decisions which Congress intended to shield from judicial second-guessing." Id. (quoting Gaubert, 499 U.S. at 325). Determining whether to take action against, cut funding from, or remove accreditation from a university, are all issues that involve "the weighing of competing interests." Plaintiff's suit is barred by the discretionary function exception.

Because Defendants did not waive their sovereign immunity under either the APA or the FTCA, the Government is immune from Plaintiff's suit. The Court does not have subject matter jurisdiction to hear Plaintiff's claim for equitable relief.

## *CONCLUSION*

Based on the foregoing, the Court concludes that Plaintiff's suit is barred by the injunction issued in Schaefer III and the Government's sovereign immunity. Three district court judgments and several agency investigations have all determined that Washington University did not act improperly. Plaintiff cannot continue to relitigate this grievance. The Court will reiterate the holding in Schaefer

---

[7]See Hartje v. F.T.C., 106 F.3d 1406, 1408 (8th Cir. 1997) (finding that counsel for the Federal Trade Commission performs a discretionary function when handling an enforcement action).

15

III and requests that Plaintiff take heed.  **Plaintiff is prohibited "from relitigating any of the claims or issues raised in Schaefer I in either federal or state court."**  Consequently, this action is dismissed with prejudice, and all remaining motions are denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (#7) be and is **GRANTED**.  Plaintiff's claims against Defendants are **DISMISSED, with prejudice**.

**IT IS FURTHER ORDERED** that all the remaining Motions are **DENIED AS MOOT**.

Dated this 9th day of November, 2005.

_____
UNITED STATES SENIOR DISTRICT JUDGE